**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ANGEL WILLIAMS VARGAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:21-cv-00574** |
| **v.** | ) | |
| | ) | **JUDGE RICHARDSON** |
| **JOSEPH JANOW,** *et al.*, | ) | **MAGISTRATE JUDGE** |
| | ) | **FRENSLEY** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Angel William Vargas, an inmate of the Bledsoe County Correctional Complex (BCCX) in Pikeville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Joseph Janow, Coty Holland, f/n/u/ Peters, BCCX, Tilly l/n/u, f/n/u Hogan, and Jeremiah Bowman, alleging violations of his civil rights. (Doc. No. 1). He also filed a motion to appoint counsel (Doc. No. 3) and a "Motion for Order for Injunction (Transport)." (Doc. No. 10).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. ALLEGED FACTS

The complaint sets forth a number of allegations pertaining to Plaintiff's confinement at the BCCX in Pikeville, Tennessee.

Sergeant Janow knew that Plaintiff had not been issued proper identification upon arriving at BCCX in April 2021 and that lack of identification would prevent Plaintiff from receiving meals. As a result of not having proper identification, on one day (three days after he arrived at BCCX)

Plaintiff only received one meal on one occasion, three days after he arrived at BCCX. Sergeant Janow ignored Plaintiff's concerns, wrote him up for a disciplinary event that did not occur, and placed Plaintiff in segregation as a punishment.

Sergeant Cody Holland did not respond to Plaintiff's grievances. He also did not follow "proper procedures" for handling inmate complaints. (Doc. No. 1 at 9). He "promoted a culture throughout the process consisting of degradation by staff, humiliation, subjugating to improper living/sanitation and personal hygiene [and] [c]reat[ed] excessive unnecessary tensions, stress, [and] frustrations[] within the facility." (*Id.* at 5).

Officer Hogan deprived Plaintiff of food on more than one occasion. He retaliated against Plaintiff for filing grievances about his living conditions and for filing this lawsuit. (*Id*. at 5, 12).

Sergeant Bowman failed to respond to concerns that Plaintiff brought to his attention. He deprived Plaintiff of food. He subjected Plaintiff to improper living conditions and "allow[ed] degradation collectively by prison officials." (*Id*. at 6). He denied and delayed proper medical treatment to Plaintiff.

Sergeants Peters and Tilly retaliated against Plaintiff for filing grievances and this lawsuit. Specifically, Peters removed Plaintiff's cellmate and stated, "You don't know me but your [sic] going to right now." (*Id*.) Peters smacked Plaintiff's arm and pushed Plaintiff back onto Plaintiff's bed during which time Plaintiff's head hit the wall. Peters and Tilly grabbed Plaintiff, threw Plaintiff against the wall, and cuffed Plaintiff. Peters tased Plaintiff "while Tilly continued abuse." (*Id*.) Peters twisted purposefully Plaintiff's handcuffs and arms, causing injury to Plaintiff's nerves, wrist, hands, shoulder, and collar bone.

On another occasion, Peters and Tilly entered Plaintiff's cell, smacked Plaintiff, pushed Plaintiff, and threw Plaintiff around. Peters "grabbed [Plaintiff's] penis" and Tilly pushed Plaintiff

to the ground. Peters tased Plaintiffs and Tilly "sat on top of [Plaintiff's] back while the weight of him kept [Plaintiff] from moving, abusing [him] and saying, 'Quit resisting' like similar to the George Floyd incident." (*Id*. at 11). Plaintiff sought medical treatment for his injuries but his request was ignored.

According to Plaintiff, the living conditions in segregation were "uninhabitable." (*Id*. at 9). There was "standing rusty water" under his bed. (*Id*.) He was denied cleaning supplies, bedding, hygiene items, toilet paper, and food. Unspecified staff members would come by his cell door and ask if he was hungry then laugh and walk away.

Defendants fabricated false disciplinary reports and deprived inmates of recreation time.

Plaintiff was placed on lockdown for an entire weekend in May 2021 as retaliation for complaining about the living conditions and lack of food. During this 72-hour period, Plaintiff could not take a shower or exit his cell for recreation.

Plaintiff sought mental health treatment for his anxiety which he alleges resulted from the retaliatory behavior by staff. His requests were ignored.

Defendants Holland, "Hogan, Gore, ect. [sic]" took Plaintiff's bed sheets, boots, boxers, hygiene items, laundry bags, legal work, religious items (Koran, reading material), towels, rags, and kitchenware. (*Id*. at 12). Plaintiff cannot send his laundry without laundry bags so his clothes are soiled.

As relief, Plaintiff seeks compensatory and punitive damages, medical treatment, reclassification, and transfer to a different facility. (*Id*. at 14).

## IV. ANALYSIS

The complaint alleges a number of claims against six individual Defendants and one entity Defendant. Each individual Defendant is sued in his individual and official capacity. The Court will address each claim in turn.

A. <u>CLAIMS AGAINST THE BCCX</u>

First, Plaintiff names the BCCX as a Defendant to this action. The BCCX is a building, not a "person" who can be sued under 42 U.S.C. § 1983. *Cf. Fuller v. Cocran*, No. 1:05-CV-76, 2005 WL 1802415, at *3 (E.D. Tenn. July 27, 2005) (dismissing Section 1983 claims against the Bradley County Justice Center on the same basis); *Seals v. Grainger County Jail*, No. 3:04CV606, 2005 WL 1076326, at *1 (E.D. Tenn. May 6, 2005) ("The Grainger County Jail, however, is not a suable entity within the meaning of § 1983."). Thus, the complaint fails to state a Section 1983 claim upon which relief can be granted against the BCCX, and all claims against the BCCX will be dismissed.

B. <u>LOSS OF PROPERTY</u>

Next, the complaint alleges that Defendants Holland, Hogan, Gore, and unspecified others took Plaintiff's personal property and refuse to return it. The Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers. However, the Supreme Court has held that, where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

The Sixth Circuit Court of Appeals has held that Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985). Plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. The complaint only alleges that Plaintiff brought the missing items to the attention of several

officers and filed written grievances regarding the matter to facility officials. Thus, because there appear to be adequate state post-deprivation remedies available to Plaintiff, his claims against all individual Defendants related to his loss of property must be dismissed.

## C. FAILURE TO RESPOND TO GRIEVANCES

The complaint alleges that several Defendants failed to respond to Plaintiff's grievances.

Prisoners does not have a constitutionally protected liberty interest in an inmate grievance procedure. *See e.g., Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (explaining that "a prisoner has no constitutional right to an effective prison grievance procedure"); *Crockett v. Davidson Cty. Sheriff's Dep't*, No. 3:19-cv-00545, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019). An inmate who is dissatisfied with the responses to his grievances fails to state a claim upon which relief can be granted. *See Proctor v. Applegate*, 661 F. Supp.2d 743, 766 (E.D. Mich. 2009); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (official's failure to process inmates' grievances, without more, is not actionable under section 1983); *Greer v. DeRobertis*, 568 F. Supp. 1370, 1375 (N.D. Ill. 1983) (prison officials' failure to respond to grievance letter violates no constitutional or federal statutory right). *See also Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Thus, Plaintiff's grievance-based claims against all individual Defendants must be dismissed.

D. <u>INSUFFICIENT FOOD</u>

The complaint alleges that on one occasion, Plaintiff only received one meal all day. On another occasion, Plaintiff was not provided with adequate food for a 72-hour period.

Under the Eighth Amendment to the United States Constitution, state officials are required to provide prisoners with adequate food. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eighth Amendment also requires that inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)) (footnotes omitted).

An Eighth Amendment claim is composed of two parts: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). In the context of a conditions-of-confinement claim, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Thus, without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. *See McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *4 (W.D. Mich. Sept. 10, 2007) (recommending dismissal of pro se prisoner's Section 1983 claim where "Plaintiff does not present any evidence that his exposure to black mold caused him anything beyond his unsubstantiated, perceived risk of future medical issues."); *see also Quarles v. Boyd*, No. 5:18-CV-P7-TBR, 2018 WL 2293957, at *2 (W.D. Ky. May 18, 2018) (finding that prisoner-plaintiff's "broad allegation" that the food he was given was not nutritionally adequate was insufficient to support a Section 1983 claim "without more detail") (citing *Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001) (rejecting

Eighth Amendment claim based on assertion that the plaintiff received only one cup of fruit as one of the six meals he received in one day); *Jackson v. Aramark*, No. 3:17-CV-P322-DJH, 2017 WL 3176284, at *3 (W.D. Ky. July 26, 2017) (finding that broad allegation that prison food was "not nutritionally adequate, no well-balanced meals" insufficient to support a constitutional claim); *Witschi v. N.C. Dep't of Pub. Safety*, No. 1:14-cv-68-FDW, 2014 WL 3735135, at *2 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite Plaintiff's allegation that he was not being fed a sufficient diet because he did not allege facts suggesting that his health had deteriorated as a result of his diet regimen)).

Here, the complaint does not allege that Plaintiff suffered any harm as a result of a deprivation of food. For example, the complaint does not allege that Plaintiff lost significant weight while in the custody of the BCCX or is suffering from any health problems as a result of an allegedly inadequate diet provided by the BCCX staff. As such, Plaintiff fails to satisfy the objective component of his Eighth Amendment claim by proving that his deprivation was sufficiently serious to warrant Eighth Amendment protection. Consequently, the complaint's allegations fail to state a Section 1983 claim upon which relief can be granted.

E. VERBAL THREATS AND HUMILIATION

The complaint alleges that Sergeant Holland "promoted a culture throughout the process consisting of degradation by staff [and] humiliation . . . [c]reating excessive unnecessary tensions, stress, frustrations, with the facility." (Doc. No. 1 at 5). The complaint also alleges that Sergeant Bowman "allow[ed] degradation collectively by prison officials." (*Id*. at 6).

However, while the Court does not condone such behavior, allegations of verbal harassment and verbal abuse by jail officials toward an inmate do not constitute cruel and unusual punishment within the meaning of the Eighth Amendment and thus do not rise to a constitutional

violation. *See e.g., Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (finding no Eighth Amendment violation for prison guard's "use of racial slurs and other derogatory language"); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. Nor do allegations of verbal harassment raise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment).

Thus, with respect to Sergeant Holland and Sergeant Bowman's verbal threats and/or efforts to humiliate Plaintiff, the complaint fails to state Eighth Amendment cruel and unusual punishment claims upon which relief can be granted, and those claims will be dismissed.

F. LYING IN DISCIPLINARY REPORTS

The complaint alleges generally that Defendants consistently fabricate false disciplinary reports which results in inmates, including Plaintiff, losing recreation time.

"[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. at 411, 480 (1972)). Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager).

In *Wolff v. McDonnell*, the Supreme Court held that, when a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (i) written

notice of the charges at least twenty-four hours prior to the hearing; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[;]" and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. 418 U.S. 539, 563-64, 566. But these protections are required only when a liberty interest is at stake. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484, 486-87 (1995). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan v. Fielding*, 136 F. App'x  818, 820 (6th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484); *see Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (finding no violation of inmate's due process rights when corrections officer assigned inmate to segregation as punishment prior to inmate's disciplinary hearing).

Here, the complaint fails to allege that the punishment Plaintiff received, or the consequences he endured, as a result of Defendants' purported false disciplinary reports imposed an atypical and significant hardship sufficient to violate due process. *See Sandin*, 515 U.S. 472, 484-86. The complaint sets forth no facts demonstrating that Plaintiff had a liberty interest in the outcome of a disciplinary hearing, such as a loss of sentence credit.

To the extent Plaintiff argues that he has the right to prove his innocence, the allegedly false disciplinary infractions about which Plaintiff complains are not the equivalent of  state or federal criminal charges against him. "The constitutional adequacy of these [prison disciplinary] proceedings is not to be measured by the requirements of a criminal prosecution, for the full panoply of procedural due process rights do not apply to the administration of prison discipline." *Brooks v. Westbrooks*, No. 3:17-cv-00686, 2017 WL 3868275, at *3 (M.D. Tenn. Sept. 5, 2017)

(quoting *Crafton v. Luttrell*, 378 F. Supp. 521, 526 (M.D. Tenn. 1973) (citations omitted)). The complaint fails to state due process claims against all Defendants under Section 1983 upon which relief can be granted. These claims will be dismissed.

G. <u>CONDITIONS OF CONFINEMENT IN SEGREGATION</u>

Plaintiff alleges that the living conditions in segregation were "uninhabitable." (Doc. No. 1 at 9). He describes "standing rusty water" under his bed and a lack of cleaning supplies, bedding, hygiene items, and toilet paper. During a 72-hour period in May 2021 when Plaintiff was placed in segregation, he was not permitted to take a shower or exit his cell for recreation.

The Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *See Farmer*, 511 U.S. 825, 832; *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). That is because "[t]he Eighth Amendment to the United States Constitution imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be 'barbarous,' nor may it contravene society's 'evolving standards of decency.'" *McKissic v Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *3 (W.D. Mich. June 29, 2020) (quoting *Rhodes*, 452 U.S. 337, 345-46); *see also Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984). Under the Eighth Amendment, prison officials cannot engage in conduct that causes the "unnecessary and wanton infliction of pain." *Ivey*, 832 F.2d 950, 954 (quoting *Rhodes*, 452 U.S. at 346).

As noted above, to prevail on an Eighth Amendment claim, a prisoner must show that he or she faced a sufficiently serious risk to health or safety and that the defendant official acted with "'deliberate indifference' to [the prisoner's] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard

to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Farmer*, 511 U.S. at 835, 839-40.

The complaint alleges that several distinct conditions of Plaintiff's confinement in segregation violate the Eighth Amendment.

First, the complaint alleges that, during his time in segregation, Plaintiff was kept in his cell for 24 hours a day with no recreation. Although unclear, it appears that the longest Plaintiff ever went without recreation with a 72-hour period. The amount of exercise that a prisoner is provided need only comport with the "'minimal civilized measure of life's necessities.'" *Walker v. Mintzes,* 771 F.2d 920, 927 (6th Cir. 1985) (quoting *Rhodes*, 452 U.S. 337, 347 ); *Jones v. Stine*, 843 F. Supp. 1186, 1193 (W.D. Mich. 1994) (citing *Walker*, 771 F.2d at 927-28 (6th Cir. 1985)) (acknowledging that the Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being). Therefore, a total denial of recreational opportunities may violate the Constitution. *See Walker,* 771 F.2d at 927-28; *McNabb v. Long*, No. 3:18-cv-0067, 2018 WL 2318342, at *4 (M.D. Tenn. May 22, 2018) (finding that prisoner-plaintiff stated a colorable Eighth Amendment claim when he alleged that jail has a policy of denying inmates all outdoor recreation and exercise). Although the Sixth Circuit has not defined a minimum standard for recreation for adult prisoners, in its opinion in *Rodgers v. Jabe*, 43 F.3d 1082, 1087-1088 (6th Cir. 1995), the Court suggested that an

hour of exercise per day, five times a week, is the constitutional minimum for inmates who were otherwise confined to their cells for the entire day. *Id.* at 1087.

Here, the complaint alleges that Plaintiff was not permitted any time outside of his cell for a 72-hour period. However, Plaintiff does not allege any physical or mental injury as a result of allegedly insufficient recreation time. Without such an allegation, Plaintiff does not state a viable Eighth Amendment claim. *See McIntyre*, 2007 WL 2986470, at *4. Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, this allegation fails to state an Eighth Amendment claim.

Second, the complaint alleges that, while in segregation, Plaintiff was not provided with supplies to clean "standing rusty water" under his bed. To the extent that Plaintiff alleges his living quarters are unsanitary due to the lack of cleaning supplies, the complaint does not allege that Plaintiff has suffered any harmful effects due to the conditions of his living quarters. *See McIntyre*, 2007 WL 2986470, at *4 (W.D. Mich. Sept. 10, 2007). This claim, too, will be dismissed.

Third, Plaintiff alleges that he was not permitted to shower during his 72-hour segregation period and was not provided with toilet paper. True, a prisoner may not be denied his basic needs, including hygiene. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Yet, "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The complaint does not allege that Plaintiff has been denied a shower or toilet paper on other occasions, nor does the complaint allege that Plaintiff was harmed by being denied the opportunity

to shower or have access to toilet paper for a 72-hour period. Like the others, these allegations fail to state colorable claim under the Eighth Amendment and will be dismissed.

## H. RETALIATION

The complaint alleges that Sergeant Janow placed Plaintiff in segregation as retaliation for Plaintiff filing a grievance, Officer Hogan humiliated and degraded Plaintiff as retaliation for Plaintiff filing grievances about his conditions of confinement and for taking legal action, Sergeants Peter and Tilly physically assaulted Plaintiff as retaliation for his filing grievances about his conditions of confinement and for taking legal action, and unspecified Defendants placed Plaintiff in lockdown for an entire weekend in May 2021 as retaliation for Plaintiff's complaints about his living conditions and the lack of food.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99. Plaintiff has the burden of proof on all three elements, *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X,* 175 F.3d at 396.

The Court finds that Plaintiff's allegations of retaliation are sufficient to state nonfrivolous claims of First Amendment retaliation. First, Plaintiff's initiation of litigation is protected speech

under the First Amendment. *See Horn v. Hunt*, No. 2:15-cv-220, 2015 WL 5873290, at \*5-6 (S.D. Ohio Oct. 8, 2015) ("[C]ourts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts"; "[o]nce a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the petitioner" implicates First Amendment protections) (citing cases). Likewise, filing grievances through an inmate grievance process is protected conduct. *See id.; Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Second, the adverse actions of being placed in segregation and under lockdown and, in the case of Defendants Peters and Tilly, of being subjected to physical assaults, would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Thaddeus-X*, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed").

Finally, Plaintiff alleges that these punitive actions soon followed his filing of grievances related to the conditions of his confinement. *See Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010) (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Consequently, the Court finds that the complaint states colorable First Amendment retaliations claim under Section 1983 against Sergeants Janow, Peters, and Tilly as well as Officer Hogan in their individual capacities.

In addition, the complaint alleges facts that could be viewed as stating colorable retaliation claims against the as-yet identified Defendants who placed Plaintiff in a 72-hour lockdown in May 2021. Taking into consideration Plaintiff's pro se status and these allegations, Plaintiff will be permitted to amend his complaint, if he so desires, to name those individuals as defendants to this

action in their individual capacities. Further, the Court notes that Plaintiff alleges specific new acts of retaliation in his motion entitled "Order for Injunction (Transport)." (Doc. No. 10 at 1). Plaintiff also will be permitted to amend his complaint to add those allegations, if he wishes.

Finally, Plaintiff also sued Janow, Peters, Tilly and Hogan in their official capacities. These claims are equivalent to claims against the entity that employs these Defendants, in this case the Tennessee Department of Corrections (TDOC). *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). "TDOC is an arm of the state of Tennessee for purposes of Eleventh Amendment immunity." *Primm v. Tenn. Dep't of Corr*., No. 3:15-cv-00230, 2017 WL 1210066, at *5 (M.D. Tenn. Mar. 31, 2017) (citing *Owens v. O'Toole*, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014)). Sovereign immunity therefore applies. *See, e.g., Carter v. Bell*, No. 3:10-0058, 2010 WL 3491160, at *4 (M.D. Tenn. Sept. 1, 2010) (holding that the Riverbend Warden "as an employee of [TDOC], represents the State of Tennessee"); *Arauz v. Bell*, No. 3:06-0901, 2007 WL 2457474, at *2 (M.D. Tenn. Aug. 24, 2007) (adopting report and recommendation holding that Riverbend employees are "employees of [TDOC]"). Tennessee's sovereign immunity protects TDOC from official capacity claims for money damages. *Jones v. Mays*, No. 3:19-cv-00795, 2020 WL 5106760, at *5 (M.D. Tenn. Aug. 31, 2020). Therefore, Plaintiff's official capacity claims seeking monetary damages must be dismissed.

There are only three exceptions to the general rule of sovereign immunity: (a) where a state has waived its immunity and has consented to be sued in federal court, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)); (b) where Congress validly abrogates sovereign immunity through its enforcement powers

pursuant to the Fourteenth Amendment to the United States Constitution, *see Seminole Tribe of Florida*, 517 U.S. at 57-73; *Quern v. Jordan*, 440 U.S. 332, 340) (1979) (collecting cases)); and (c) where a plaintiff sues state officials in their official capacities seeking only prospective injunctive relief for a continuing violation of federal law, *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997); *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). The first two exceptions do not apply: Congress has not abrogated Eleventh Amendment immunity under Section 1983, and Tennessee has not waived it or consented to suit under Section 1983. *Primm*, 2017 WL 1210066, at *5 (citing *Owens*, 2014 WL 5846733, at *3); *Burrell v. Tenn. Dep't of Human Servs.*, No. 94-5754, 1995 WL 314891, *2 (6th Cir. May 23, 1993) (per curiam); *Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-cv-2377, 2015 WL 4879107, at *6 (M.D. Tenn. Aug. 14, 2015). Although Plaintiff seeks prospective injunctive relief of the nature that may implicate *Ex Parte Young*, Plaintiff has not named an appropriate TDOC official as a Defendant. "[D]emands for injunctive relief are properly brought against a TDOC official in his official capacity." *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *2 (M.D. Tenn. Mar. 5, 2020) (citing *Will*, 491 U.S. at 71 n.10). Therefore, Plaintiff is not entitled to injunctive relief.

However, even construing Plaintiff's pro se allegations liberally and proceeding as though Plaintiff had named an appropriate TDOC official as a defendant, Plaintiff still is not entitled to relief. Under Section 1983, the state of Tennessee cannot be held liable for injunctive relief under a theory of respondeat superior or vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, a plaintiff must allege: (1) that he or she suffered a constitutional violation; and (2) that a policy or custom of TDOC or the state of Tennessee directly caused the violation. *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. 658, 690-92). In other

words, "[a] plaintiff seeking to impose liability under [Section] 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." *Phillips v. Shelton*, No. 2:18-cv-00077, 2019 WL 429679, at *4 (M.D. Tenn. Feb. 4, 2019) (quoting *Burns v. Robertson Cty.*, 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) and *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, Plaintiff does not attribute his alleged harms to any particular TDOC or Tennessee policy. The complaint contains no allegations regarding any TDOC policy being a moving force behind any alleged injury to Plaintiff. In fact, the factual allegations of the complaint do not mention TDOC policies at all. Accordingly, Plaintiff's official capacity claims for injunctive relief against Sergeants Janow, Peters, and Tilly and Officer Hogan will be dismissed for failure to state Section 1983 claims upon which relief can be granted.

I. EXCESSIVE FORCE

The complaint alleges that Plaintiff was the victim of excessive force on two occasions by Sergeants Tilly and Peters.

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive

force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

In determining whether the force used was applied in a good faith effort to restore discipline or rather inflicted for a malicious purpose, it is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 581 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (alteration in original). A significant physical injury is not required to establish the objective component of an Eighth Amendment claim. *Wilkins*, 559 U.S. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). In the end, a determination of what constitutes "unnecessary and unwanton infliction of

pain," is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8.

Here, the complaint alleges facts that could be viewed as stating colorable excessive force claims against Sergeants Tilly and Peters in their individual capacities. These claims shall proceed for further development.

For the same reasons outlined by the Court above, the claims against Sergeants Tilly and Peters in their official capacities fail to state claims upon which relief can be granted under Section 1983. Those claims will be dismissed.

J. <u>DENIAL OF MEDICAL AND MENTAL HEALTH TREATMENT</u>

The complaint alleges that Plaintiff was denied proper medical and mental health treatment while incarcerated at the BCCX.

Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. *See Estelle*, 429 U.S. 97, 104 (deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994) (same); *Comstock*, 273 F.3d at 703 (there is no dispute that "psychological needs may constitute serious medical needs.") (citation omitted). A claim of deliberate indifference to a prisoner's medical or mental health needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact

draw the inference, and that he then disregarded that risk." *Id*. Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*.

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d 693, 703.

Here, the complaint alleges generally that Sergeant Bowman "den[ied] and delay[ed] [Plaintiff] the proper access to medical treatment services." (Doc. No. 1 at 6). The complaint further alleges that an unidentified individual denied Plaintiff medical treatment after he sustained

injuries as a result of the alleged excessive force used by Sergeants Tilly and Peters and unspecified individuals denied Plaintiff mental care treatment for his anxiety. It is possible to read the pro se complaint as alleging that Sergeant Bowman is the individual who denied Plaintiff treatment after the injuries he sustained in the alleged Tilly and Peters incident and/or one of the individuals who denied Plaintiff treatment for his anxiety. However, the complaint's only direct assertion about Sergeant Bowman—that he generally delayed and denied medical treatment to Plaintiff—fails to make sufficient allegations to give a defendant "fair notice" of the claim. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 544 (2007). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). However, taking into account Plaintiff's pro se status and the fact that Plaintiff alleged sufficiently serious injuries and that Sergeant Bowman acted with "evil intent and motives" (Doc. No. 1 at 6), Plaintiff will be permitted to amend his complaint, if he so desires, to identify the specific way(s) Sergeant Bowman denied medical treatment to Plaintiff.

Likewise, the Court will permit Plaintiff to amend his complaint to specifically identify every individual Defendant who has denied Plaintiff medical and/or mental health treatment and

explain how each Defendant acted with deliberate indifference to Plaintiffs medical and/or mental health needs. Plaintiff must describe the personal involvement of each Defendant in the alleged unconstitutional behavior rather than make a generalized assertion that all Defendants violated Plaintiff's rights.

Plaintiff has not, however, stated a colorable Eighth Amendment claim against Sergeant Bowman in his official capacity, for the same reasons discussed above, and that claim will be dismissed.

## V. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff filed a motion seeking the appointment of counsel. (Doc. No. 3). He states that he is indigent, the issues in this case are complex,  he has a limited knowledge of the law, and he has limited access to the law library. (*Id*. at 1). He further states that "[a] trial in this case will likely involve conflicting testimony and counsel would better enable plaintiff to present evidence and cross examine witnesses." (*Id*.)

The Supreme Court has held that "an indigent's right to appointed counsel exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.*, No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

Plaintiff's lack of legal training and financial circumstances are typical to most pro se prisoner litigants. *See Debow v. Bell*, No. 3:10-cv-1003, 2010 WL 5211611, at *1 (M.D. Tenn.

Dec. 15, 2010) (inmates are typically indigent, legally untrained, pro se litigants). It does not appear that either the factual or legal circumstances of this case are so complex as to constitute "exceptional circumstances" necessitating the appointment of counsel. Plaintiff has filed a complaint, an application to proceed in forma pauperis and supporting documents, a motion seeking counsel, and a request for an injunction. The Court finds that Plaintiff is effectively representing his own interests to date. *See, e.g., Flores v. Holloway*, No. 3:17-cv-00246, 2017 WL 2812908 at *2 (M.D. Tenn. June 29, 2017) (denying motion for the appointment of counsel when petitioner submitted a "lengthy petition" demonstrating his ability to litigate his case). Accordingly, the Court finds that the interests of justice do not require the appointment of counsel at this time. Plaintiff's motion for the appointment of appoint counsel (Doc. No. 3) therefore will be denied without prejudice. Plaintiff may renew this motion at a later time if the circumstances warrant.

## VI. MOTION FOR ORDER FOR INJUNCTION

Finally, Plaintiff filed a motion entitled "Order for Injunction (Transport)" in which he asks the Court to "issue a transport order to remove plaintiff from BCCX due to the recent deprivation of rights." (Doc. No. 10).

Federal Rule of Civil Procedure 65 governs the Court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take

proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Checker Oil Co.,* 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Liberty Coins, LLC v. Goodman,* 748 F.3d 682, 689-90 (6th Cir. 2014); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

In this case, a careful balancing of the factors weighs against granting Plaintiff's request for emergency injunctive relief.

First, under controlling Sixth Circuit authority, the plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *Liberty Coins,* 784 F.3d at 689-90. At this point, at best Plaintiff's likelihood of success on his claims is roughly equivalent to Defendants' likelihood.

With regard to the second factor, Plaintiff asks for the injunction because wants to be moved to a different prison "until this lawsuit has concluded." (Doc. No. 10 at 2). He believes that BCCX staff members are retaliating against him for filing this lawsuit by depriving him of food, recreation, showers, a working toilet, and cleaning supplies. (*Id*. at 1). He further alleges that staff members have taken his grievance-related and legal paperwork. (*Id*.) He does not allege that he will be irreparably harmed if an injunction is not entered.

Plaintiff's allegations are similar, if not identical, to the allegations Plaintiff makes in his complaint about the conditions of confinement in segregation. And the Court has determined that those allegations fail to state Eighth Amendment claims upon which relief could be granted under Section 1983. Thus, these constitutional claims do not support Plaintiff's argument that he will be irreparably harmed without the Court's action. *See Dulak v. Corizon Inc*., No. 14-10193, 2014 WL 4678085, at *6 (E.D. Mich. June 9, 2014), *report and recommendation adopted*, 2014 WL 4678086 (E.D. Mich. Sept. 18, 2014) ("[B]ecause it appears unlikely, on the current record, that plaintiff will be able to demonstrate that he has a cognizable constitutional claim, he is not entitled to a presumption of irreparable harm based on the alleged constitutional violation."). Of course, the Court has found that Plaintiff stated colorful retaliation claims, and this finding does not alter that ruling.

And, while it appears that no third parties would be harmed if the preliminary injunction were issued, neither does it appear that any public interest would be served. Indeed, any relief that this Court would provide would remove from prison officials the deference that they are generally afforded in the administration and control of the prison. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988) (setting forth various public policy concerns relating to court intrusion into prison administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"); *Griffin v. Berghuis*, 563 F. App'x 411, 417-18 (6th Cir. 2014) (citing *Turner v. Safley*, 482 U.S. 78, 82 (1987)) (decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive). Furthermore, inmates have no constitutional right to be confined in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Therefore, Plaintiff has no constitutional right to choose his site of imprisonment, which is the goal of his request for injunctive relief.

For these reasons, Plaintiff has not borne his burden for issuance of emergency injunctive relief. Plaintiff's allegations do not clearly demonstrate the likelihood of immediate and irreparable harm before Defendants can be heard. Therefore, Plaintiff's motion (Doc. No. 10) will be denied.

## VII. CONCLUSION

Having screened the complaint pursuant to the PRLA, the Court finds that the complaint states colorable First Amendment retaliation claims under Section 1983 against Sergeant Janow, Sergeant Peters, Sergeant Tilly, and Officer Hogan in their individual capacities as well as

colorable Eighth Amendment excessive force claims against Sergeants Tilly and Peters in their individual capacities.

In addition, the complaint alleges facts that could be viewed as stating colorable First Amendment retaliation claims against the as-yet identified Defendants who placed Plaintiff in a 72-hour lockdown in May 2021. Taking into consideration Plaintiff's pro se status and these allegations, Plaintiff will be permitted to amend his complaint, if he so desires, to name those individuals as defendants to this action in their individual capacities. Plaintiff also will be permitted to amend his complaint to add claims against the individual(s) responsible for the alleged recent acts of retaliation described in his motion entitled "Order for Injunction (Transport)." Further, Plaintiff will be permitted to amend his complaint to identify the specific way(s) Sergeant Bowman denied medical treatment to Plaintiff as well as the other individual(s) responsible for the alleged denial of medical and mental health treatment to Plaintiff.

All other claims and named Defendants will be dismissed.

Plaintiff's motions for the appointment of counsel (Doc. No. 3) and for injunctive relief (Doc. No. 10) will be denied.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE